276 A.2d 468.

ALVON C. WINEGAR *vs.* MAX R. EARLE.

APRIL 27, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is a civil action to recover the unpaid balance of the agreed minimum consideration for the sale of a medical practice. It was tried to a Superior Court justice who, sitting without a jury, rendered a decision for the defendant on the latter's plea that the claim was barred by the statute of limitations. From the judgment accordingly entered, plaintiff seasonably appealed.

The ultimate facts are not in dispute and are readily stated. They establish that on December 15, 1959, plaintiff, a successful practicing obstetrician and gynecologist in Benton Harbor, Michigan, concluded negotiations with defendant for the purchase by the latter of the former's practice. The sale was made effective as of midnight January 31, 1960, and, meanwhile, defendant would work with plaintiff as the latter's assistant for a stipulated salary. The consideration moving from defendant to plaintiff was as follows:

"3. *Purchase price.* The purchase price for the good will of the practice as provided in Paragraph 1 and the restrictive covenant as provided for in Paragraph 2 shall be computed and paid as follows:

"(a) During the period from February 1, 1960, to January 31, 1961, Dr. Earle shall pay to Dr. Winegar fifteen (15%) per cent of the gross receipts received by Dr. Earle from the practice of medicine.

"(b) During the period from February 1, 1961, to January 31, 1962, Dr. Earle shall pay to Dr. Winegar twelve (12%) per cent of the gross receipts received by Dr. Earle from the practice of medicine.

"(c) During the period from February 1, 1962, to January 31, 1963, Dr. Earle shall pay to Dr. Winegar eight (8%) per cent of the gross receipts received by Dr. Earle from the practice of medicine.

"Fifty (50%) per cent of such payments are attributable to the sale of the good will of the practice as provided for in Paragraph 1, and fifty (50%) per cent of such payments are attributable to the restrictive covenant provided for in Paragraph 2. The above payments shall be computed on a cash basis and shall be paid monthly. The payment for the month of February, 1960, shall be paid on or before April 1, 1960, and, similarly, each monthly payment thereafter shall be made on or before the first day of the second succeeding month. In the event that the total of the percentage payments provided for above during the period from February 1, 1960, through January 31,

> 1963, shall be less than Fifteen Thousand ($15,000.00) Dollars, on or before March 1, 1963, Dr. Earle shall pay to Dr. Winegar the difference between Fifteen Thousand ($15,000.00) Dollars and the total of such percentage payments. Dr. Earle agrees to engage actively in the full-time practice of medicine from February 1, 1960, through January 31, 1963. The payments provided for in this paragraph shall be mailed to Dr. Winegar at the address designated by Dr. Winegar from time to time."

The evidence adduced at trial further establishes that plaintiff moved from Michigan to Missouri on February 1, 1960, and on that date, defendant assumed plaintiff's practice pursuant to the contract. It is not disputed that for the first few months defendant paid the agreed percentage and that these payments amounted to $1,500. The defendant, however, was encountering difficulties, the nature of which were never disclosed. Suffice it to note that on return from a vacation in July 1960, defendant learned that he no longer had staff privileges in the two hospitals in the area of his practice.

Recognizing that he could not hope to practice obstetrics and gynecology successfully without such privileges, he notified plaintiff that he was giving up the practice and, in effect, repudiating the contract. He first made this known to plaintiff by telephone and then, on July 18, 1960, confirmed his decision by letter sent to plaintiff, registered mail return receipt requested. Thereafter defendant forwarded the charts and records of patients to plaintiff. The defendant then left Michigan to practice in Canada, where he remained. The plaintiff took no action until March 17, 1967, when the instant complaint was filed in Superior Court.

In his answer, defendant admitted signing the contract, but alleged that plaintiff had induced him to do so on a promise to obtain staff privileges for him at both hospitals;

raised the defense of impossibility of performance; and brought a counterclaim for damages resulting from plaintiff's alleged breach of his promise to obtain the staff privileges.

On the day of trial, both parties were granted leave to file the additional defenses that the complaint and counterclaim were barred by the six year limitation of actions imposed by G. L. 1956 (1969 Reenactment) §9-1-13.

The trial justice found that plaintiff had performed all of his obligations under the contract, was not responsible for defendant's failure to obtain staff privileges at the two hospitals and that except for the statute of limitations, plaintiff was entitled to the balance of $13,500 due under the minimum consideration provision of the contract. Consistently, he found for the plaintiff on the defendant's counterclaim.

He also found, however, that the defendant had "unmistakably, unequivocally and finally breached the contract during the summer of 1960" and held that the period of limitations began to run at that time. Accordingly, he held that plaintiff's action was barred and rendered his decision for defendant.

The judgment accordingly entered simply states "Judgment is entered for the Defendant for costs". It is important to note that, although the trial justice, in his decision, found for plaintiff on defendant's counterclaim on the facts, no judgment was entered thereon. We have before us, then, only the judgment relating to plaintiff's complaint.

From that judgment plaintiff brought the instant appeal. The sole issue before us then is whether the trial justice was correct in holding that plaintiff's action was barred by the statute of limitations.

In urging that his claim is not barred by §9-1-13, plain-

tiff makes two alternative contentions. These are, first, that the great weight of authority takes the position that the doctrine of anticipatory breach is not applicable to a contract which, bilateral in origin, has become unilateral by reason of complete performance by one of the parties. In support thereof he refers our attention to 17A C.J.S. *Contracts,* §472(2)(b), 17 Am.Jur.2d *Contracts,* §455, and cases therein cited.

Alternatively, he contends that even in those jurisdictions where anticipatory breach of a unilateral contract is recognized, the weight of authority supports the proposition that the non-breaching party, such as plaintiff here, has the election of taking action immediately upon the act of repudiation or awaiting the time specified for performance in the contract, citing 51 Am.Jur.2d *Limitation of Actions,* §132 and 17A C.J.S. *Contracts,* §472(2)(c). In the view we take of plaintiff's principal contention, this alternative contention need not be considered.[1] 1 Restatement of Contracts, §318 provides in pertinent part:

> "*Except* in the cases of a contract originally unilateral and not conditional on some future performance by the promisee, and of a contract originally bilateral that has become unilateral and similarly unconditional by full performance by one party, any of the following acts, done without justification by a promisor in a contract before he has committed a breach under the rules stated in §§314-315, constitutes an anticipatory repudiation which is a total breach of contract: (emphasis ours)
>
> "(a) a positive statement to the promisee or other

---

[1]Although not bearing on the issue in the instant case, we think it worthy of note that in *Scullian* v. *Petrucci,* 108 R. I. 406, 276 A.2d 277, this court held that an unambiguous acceleration clause in a conditional sales agreement cannot be so construed as to give the promisee the right to elect the time when the cause of action accrues. So holding, we stated our adherence to the principle of not rewriting the contract made by the parties.

person having a right under the contract, indicating that the promisor will not or cannot substantially perform his contractual duties;"

(b) not applicable to the facts here.

"(c) any voluntary affirmative act which renders substantial performance of his contractual duties impossible, or apparently impossible."

The question of whether the anticipatory breach doctrine, so-called, should be followed where the contract has become executory as to one party is novel in this jurisdiction.

This circumstance has led us to an extensive review of the numerous cases covered in the eminent digests cited by the parties, as well as a consideration of the reasoning advanced by the esteemed text-writers Williston and Corbin.[2]

Such research discloses, interestingly enough, that the rule laid down in the Restatement which excludes application of the doctrine of anticipatory breach in the case of a contract originally bilateral, which has become unilateral by reason of full performance by one party to the original contract, is so universally accepted that, almost invariably, the courts simply state the exclusion. Classical of such unadorned statements is that of Mr. Justice Cardozo in *Smyth* v. *United States,* 302 U.S. 329, at 356, 58 S.Ct. 248, at 253, 82 L.Ed. 294, at 301, where that learned justice simply states:

---

[2]Prominent among such cases are: *Smyth* v. *United States,* 302 U. S. 329, 58 S.Ct. 248, 82 L.Ed. 294; *Lynch* v. *Stebbins,* 127 Me. 203. 142 A. 735; *Sheketoff* v. *Prevedine,* 133 Conn. 389, 51 A.2d 922; *Leon* v. *Barnsdall Zinc Co.,* 309 Mo. 276, 274 S.W. 699; *Clarey* v. *Security Portland Cement Co.,* 99 Cal. App. 783, 279 P. 483; *Sinkwich* v. *E. F. Drew & Co.,* 9 A.D.2d 42, 189 N.Y.S.2d 630; *Mack* v. *Revicki,* 47 N. J. Super. 185, 135 A.2d 569; *Phelps* v. *Herro,* 215 Md. 223, 137 A.2d 159.

The two text-writers are somewhat at odds. A comparison of their respective views may be had from a reading of 11 Williston, *Contracts,* 3d Ed. 1968, §§1300-1319 and 1326, and 4 Corbin, *Contracts,* 1951, as amended by 1964 amendment, §§959-966.

"But the rule of law is settled that the doctrine of anticipatory breach has in general no application to unilateral contracts, and particularly to such contracts for the payment of money only."

Be that as it may, it sems clear that the rationale of the rule adopted in the Restatement and almost universally followed by the courts, is to give to the parties in a contract action, that for which they provided wherever it is possible to do so. Thus, when a party to a bilateral contract is guilty of a breach thereof, anticipatory or otherwise, the non-defaulting party's recourse to the courts is to recover not that for which he bargained, but rather such damages as he might be able to prove. See *Messier* v. *Messier*, 34 R. I. 233, 82 A. 996.

When, however, as here, there has been full performance of a contract, which between December 15, 1959 and midnight January 31, 1960, was bilateral, it is possible for the courts to give to the parties that for which they themselves provided. Specifically, plaintiff was to receive an agreed monthly percentage for each month commencing February 1960 through January 1963, and the difference between the total of such payments as were made and $15,000. The parties themselves, however, agreed that such difference, if any, would not be payable until March 1, 1963. To hold that plaintiff had the right to bring an action for such difference prior to March 1, 1963, would be to rewrite the contract made by the parties.

It is our judgment, therefore, that the plaintiff's action, having been commenced within six years next after the date when the cause of action accrued, it was not barred by operation of §9-1-13.

The plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the Superior Court for entry of judgment for plaintiff with costs.

*Hinckley, Allen, Salisbury & Parsons; Guy J. Wells, Michael P. DeFanti,* for plaintiff.

*Moore, Virgadamo, Boyle & Lynch, Francis J. Boyle,* for defendant.